**Jeffrey VALTAKIS, Appellant,**

v.

**James Lee PUTNAM, et al., Defendant,**

**Olmsted County, et al., Jeff Brown, an employee of Park Place Clinic, Inc., Southwest Family Services, P.A., Respondents.**

**No. CX–93–409.**

Court of Appeals of Minnesota.

Aug. 10, 1993.

Thomas E. Gorman, Gorman & Gorman, Ltd., Red Wing, for Jeffrey Valtakis, Appellant.

James T. Martin, Gislason, Martin & Varpness, P.A., Edina, for James Lee Putnam, et al., Defendant, Olmsted County, et al., Respondents.

Richard D. Wright, Kathleen F. MacLennan, Bloomington, for Jeff Brown, an employee of Park Place Clinic, Inc., Respondent.

Richard L. Pemberton, Jr., Kenneth W. Dodge, Meagher & Geer, Minneapolis, for Southwest Family Services, P.A., Respondent.

Considered and decided by KALITOWSKI, P.J., and NORTON and FLEMING *, JJ.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

WILLIAM J. FLEMING, Judge.

■ Appellant claimed that he had been sexually abused by defendant James Lee Putnam from the spring of 1986 to the spring of 1991. Appellant filed suit against Putnam and the respondents alleging that the respondents had knowledge of the sexual abuse in 1986 but failed to make a proper report of the suspected abuse to the proper authorities pursuant to Minn. Stat. § 626.556 (1990). Respondents moved for summary judgment of dismissal claiming discretionary immunity, quasi-judicial immunity and appellant's failure to make a claim for which relief can be granted. The motions were granted and the judgment was certified as final, pursuant to Minn. R.Civ.P. 54.02. An appeal was filed. We affirm on the sole ground that appellant has failed to make a claim for which relief can be granted.

## FACTS

In December 1983, James Lee Putnam was sentenced to five years probation for sexual abuse of a minor. The trial court assigned Bryce Fier of Olmsted County Correctional Services to be his probation officer and stated that Putnam must remain law abiding and receive counseling if determined necessary by the probation officer. Fier required Putnam to obtain psychiatric counseling as a part of his rehabilitation and to report to him once monthly.

Putnam originally received counseling from Alpha Human Services with Jeff Brown as his psychologist. Early in 1984, Putnam moved to Red Wing, Minnesota. Fier remained Putnam's probation officer and Brown remained his psychologist. However, following the move to Red Wing, John Radmer, a probation officer, was sent information regarding Putnam's criminal history, counseling, residence, and employment. In addition, Brown moved from his position at Alpha Human Services to positions with Park Place Clinic in 1984 and then to Southwest Family Services in Sep-

tember 1987. Lastly, Putnam personally paid for the counseling services he received from Brown at Park Place and Southwest.

Putnam met appellant Jeffrey Valtakis in 1984 when Valtakis was 12 years old. Putnam had sold a car to Valtakis' mother and began seeing her socially. Putnam helped Valtakis with his paper route, assisted him with his homework, and did other social things with appellant.

Sometime in the summer of 1986 appellant was seen at Putnam's home clad only in his underwear or a towel. Fier first was informed that Putnam may be associating with minors in November 1986. On November 24, 1986, Fier telephoned John Radmer about the information. Radmer encouraged Fier to get more information so that a full report could be made to the authorities. That same day, Radmer contacted the Red Wing Police Department with the information on Putnam's criminal history. In early December, 1986, Fier telephoned Radmer telling him that appellant was the juvenile seen nearly naked at Putnam's house. Radmer relayed the details to the Red Wing Police and to the Goodhue County Social Services. The police told Radmer that they had already gathered information and were aware of Putnam's relationship with appellant. No further action was taken against Putnam at that time, and he was released from probation in 1988.

Appellant claims that he was sexually abused by Putnam between May 1986 and May 1991. In July 1991, appellant filed a civil suit for failure to report suspected sexual abuse against Fier and the Olmsted County Correctional Services, Brown and Southwest Family Services, and various correctional agencies of the State of Minnesota. The respondents moved for and were granted summary judgment dismissal.[1] The trial court held that Fier, Olmsted County, and the State of Minnesota were immune from suit because of discretionary immunity, Brown and Southwest Family Services were immune from liability because of quasi-judicial immunity, and the

1. Putnam and appellant reached a settlement by which Putnam would be released from suit and

Valtakis would receive some compensation from Putnam's home owners insurance.

suit against the respondents was barred because the statute does not provide for a private right of action for failure to report suspected child abuse. The trial court's order for summary judgment was certified as final.

### ISSUE

Does Minn.Stat. § 626.556 (1990) provide for a civil cause of action for failure to report suspected child abuse?

### ANALYSIS

This case involves a summary judgment dismissal against some of the defendants in a civil action. Summary judgment motions are governed by the Minnesota Rules of Civil Procedure. Summary judgment should be granted:

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law.

Minn.R.Civ.P. 56.03. On appeal, this court must determine whether issues of material fact exist and whether the trial court properly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The party opposing a summary judgment motion "cannot rely upon mere general statements of fact but rather must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial." *Hunt v. IBM Mid–America Employees Fed. Credit Union*, 384 N.W.2d 853, 855 (Minn.1986). "A material fact is one of such a nature as will affect the result or outcome of the case depending on its resolution." *Zappa v. Fahey*, 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976).

The Child Abuse Reporting Act (CARA) requires certain professionals to file reports with the local welfare agency or police of suspected neglect, physical abuse, or sexual abuse of children. Minn.Stat. § 626.556 (1990). CARA was enacted "to protect children whose health or welfare may be jeopardized through physical abuse, neglect or sexual abuse." *Id.*, subd. 1. Failure to make a report of a person so mandated is a misdemeanor. *Id.*, subd. 6.

Appellant argues that the statute imposed a duty on respondents to report and that failure to report was a breach from which appellant can seek tort damages. *See Lorshbough v. Township of Buzzle*, 258 N.W.2d 96, 98 (Minn.1977) ("An unexcused violation of a statute that establishes a standard of care is negligence, and liability is the consequence if proximate causation is proved."). As a result, appellant argues that the criminal misdemeanor sanction is merely an additional penalty, along with a civil suit, which a person who fails to make a report may face.

■ We disagree. A statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication. *Larson v. Dunn*, 460 N.W.2d 39, 47 n. 4 (Minn.1990). Here, subdivision 6 addressed the failure to report: "A person mandated by this section to report [suspected child abuse] * * * [who] fails to report is guilty of a misdemeanor." Minn.Stat. § 626.556, subd. 6. There is no mention of a civil cause of action for failure to report nor is a civil action implied by the language of the subdivision. *Id.*

Nonetheless, appellant argues that CARA taken as a whole imposes a duty between respondents and himself, giving rise to a common-law negligence action. However, where no common-law duty existed before the statute was enacted, we must limit ourself to the explicit language and clear implication of the statute. *Bruegger v. Faribault County Sheriff's Dep't*, 497 N.W.2d 260, 262 (Minn.1993). The principles of judicial restraint forbid us from creating new causes of action which the legislature has not expressed or implied. *Id.* Since CARA created the duty to report, a civil action cannot lie outside the express or clearly implied language of the statute.

Moreover, appellant's sole argument against respondents is that they failed to report suspected sexual abuse of him when

it was first discovered in the fall of 1986. The undisputed facts are that Fier told Radmer, who in turn informed the Red Wing Police. Fier gave Radmer appellant's name and the circumstances surrounding the incident with Putnam. Radmer was also apprised of Putnam's criminal history. CARA requires no more than "one report from any institution, facility, school, or agency." Minn.Stat. § 626.556, subd. 3(a). In addition, the statute envisions some persons may be "mandated * * * [in] assisting in assessment" of a child abuse report. *Id.*, subd. 4(a)(1). Hence, Brown assisted Fier in the report. As a result, we conclude that respondents sufficiently complied with the reporting requirements of the statute.

Since there was no underlying civil cause of action for failure to report suspected child abuse and since respondents, nevertheless, complied with the reporting statute, we do not need to rule on whether respondents are protected by principles of discretionary immunity and quasi-judicial immunity.

## DECISION

We agree with the trial court that since Minn.Stat. § 626.556 does not impose a duty between respondents and appellant which can support a negligence action, appellant has failed to state a claim for which relief can be granted. In addition, the facts demonstrate respondents complied with the reporting requirements. As a result, no genuine issues of material fact were in dispute and summary judgment was proper.

**Affirmed.**